[No. 4015.]

# THE BAY VIEW HOMESTEAD ASSOCIATION v. HENRY F. WILLIAMS AND JAMES GRAVES.

CORPORATION AND ITS TREASURER.—If a corporation becomes obligated to pay a sum of money, and places the money in the hands of its treasurer for the purpose of meeting the obligation, and the treasurer expends the money for the benefit of the obligee, and the corporation by resolution entered on its records assents to the expenditure thus made, it cannot afterwards hold the treasurer liable for the money.

IDEM.—If, in such case, the assent of the corporation is formally given by its board of directors, and the assent thus given is ordered to be entered on its records, but, by the neglect or oversight of the secretary, it is not entered of record, or if for any cause the corporation postpones its formal entry of record, such assent will, in like manner, release the treasurer from liability to the corporation.

RECORDS OF A CORPORATION.—The acts of the board of directors of a corporation, ordered to be entered of record, but which the secretary, by neglect or mistake, does not enter, may be proved by parol testimony.

IDEM.—If the corporation, for reasons deemed sufficient by it, postpones the formal entry of record of the acts of its board of directors, they may be proved by parol testimony.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

Suit on a promissory note, of which the following is a copy:

"$9945.44. "SAN FRANCISCO, August 25, 1871.

"On or before the 25th of September, 1871, for value received, I promise to pay to the order of the Bay View Homestead Association the sum of $9945.44, in gold coin of the United States, it being the amount of funds of said association held by me as late treasurer thereof, with interest thereon from date until paid, at the rate of one per cent. per month. Interest and principal payable in like gold coin.
(Signed) "H. F. WILLIAMS."

The defendant Graves indorsed the note before it was delivered.

The following is a copy of the record in relation to the testimony ruled out, and on which the judgment is reversed·

"Mr. Nougues—State if you know any reason why it was not deemed advisable to publicly notice the order of payment.

"Objected to as immaterial and irrelevant. Objection sustained. Defendants except."

The plaintiff recovered judgment and the defendants appealed.

The other facts are stated in the opinion.

*Jos. M. Nougues,* for the Appellant.

*W. H. Brumfield,* for the Respondent.

By the Court, CROCKETT, J.:

On the 1st day of March, 1869, the plaintiff was a homestead corporation, owning lands in the suburbs of the city of San Francisco, and the Potrero and Bay View Railroad Company was a corporation then owning and operating a line of street cars from the more populous parts of the city to or in the direction of the plaintiff's lands. At that time the defendant Williams was the treasurer of the corporation plaintiff, and on that day the defendant Graves made a proposition in writing to the plaintiff, representing that he had made arrangements and intended to purchase a controlling interest in the stock of the railroad company, and proposed to extend and improve the road and to reduce the fares thereon in certain specified particulars, provided satisfactory arrangements could be made with the plaintiff and several other corporations, "for pecuniary aid and moral support in the undertaking." Thereupon the trustees of the corporation plaintiff adopted a resolution reciting that the association had by resolution authorized them to agree upon such terms as they should deem advisable with the railroad company to aid in the improvement of the road, and that the railroad company had proposed to the plaintiff to make certain improvements, and thereupon the trustees "*Resolved,* That this company or association does hereby hold itself firmly and truly bound unto the said Potrero and

Bay View Railroad Company in the sum of $10,000, payable in gold coin of the United States, subject to the following conditions." The improvements to be made are then specified, and one of the conditions is that the railroad company shall agree, after the improvements are made and the fares reduced, to maintain the same for the period of ten years. It was further resolved that a certified copy of the resolution be furnished to the railroad company "for its security as to the promises and agreements of this company, contained therein, provided said railroad company shall, by due authority, first filed with the secretary of this association, express its assent and acceptance of the terms of this contract." It appears in the case that, about this time, the defendants became the equitable owners of nearly all the outstanding stock of the railroad company, leaving the legal title, however, in the vendors from whom it was purchased, as security for the unpaid purchase-money. Thereupon the defendants immediately proceeded to make the improvements in the road specified in the resolution of the plaintiffs' board of trustees, and within the specified time had performed all the requisite conditions in respect to the said improvement, the running of cars, rates of fare, etc., and in performing the work had expended a large sum of money. In the meantime the plaintiff, for the purpose of providing a fund for the payment of the $10,000 when it should become due, if at all, had collected that amount through an assessment of its stockholders; and when collected it was received by the defendant Williams, then the plaintiff's treasurer, and the proper custodian of the fund. It appears from the evidence (and without contradiction, so far as I can discover from the record) that the $10,000 was expended by Williams in the performance of the work on the road, with the knowledge, and with at least the implied consent of the plaintiff's board of trustees. It is distinctly shown that the president and trustees were fully aware that the money was being so expended, and there is no proof that they, in any manner, expressed or intimated their dissatisfaction therewith. But on the completion of the work, the plaintiff demanded that the railroad company execute a bond to the effect

that the road should be maintained in its then condition for the period of ten years. The president and trustees of the railroad company declined to give the bond, and had not, as yet, recognized in any manner the payment of the $10,000 by the plaintiff. In the meantime the purchase-money for the stock of the railroad company, purchased by the defendants, remained unpaid, and was held by the former owners as a security for the debt. But it appears in evidence that the defendants were under the belief that they would shortly be able to pay for the stock and thus secure the absolute control of the road; in which event the railroad company would execute the required bond, and acknowledge the expenditure of the $10,000 by Williams as a payment by the plaintiff to the railroad company. But until this could be accomplished, it was agreed, as the evidence already shows, between Williams and the plaintiff, that he should make and deliver to the plaintiff his promissory note for the amount received by him as treasurer, as before stated; which was done accordingly. On the maturity of the note, the note now in suit was substituted for it, with the defendant Graves as indorser. Subsequently the defendants paid the balance due from them for the stock, and the entire road, with all the stock, was sold and transferred to Stanford and others, who were informed at the time of their purchase that this money had been paid to Williams, and who agreed to carry out and have thus far performed the conditions of the arrangement with the plaintiff. There is no evidence tending to show that the railroad company has ever demanded this money from the plaintiff, or asserts any claim to it; nor could it enforce the payment of it. The result of these transactions is, first, that the money represented by the note was expended by Williams in the performance of the work on the road, with the knowledge and concurrence of the plaintiff. Second, that the work was performed according to the agreement, and the plaintiff is now enjoying the benefit of it. Third, that the plaintiff is not liable to pay the money a second time. Fourth, that the railroad company is bound to maintain the road, as required by the conditions of the agreement, for ten years

from the time the improvements were completed. At the trial the defendant Williams was examined as a witness on his own behalf, and stated in detail the circumstances attending the receipt and expenditure by him of the moneys represented by the note in suit, and, after stating that the directors and officers of the plaintiff not only knew and approved of the expenditure of the money by him, but were anxious that the work should be carried forward, he was asked if he knew of any reason why the assent of the corporation plaintiff to the expenditure of this money by him had not been formally entered upon its records. This was objected to by the plaintiff, only on the ground that the evidence sought was immaterial and irrelevant, and the objection was sustained by the court below. In this ruling there was error. If the president and directors of the plaintiff had caused to be formally entered of record its assent to the expenditure of the money by the defendant Williams in improving the road, and he had in fact so expended it, there can be no doubt that the plaintiff must have failed in the action. If they had assented and ordered it entered of record, and if, by mistake or oversight of the secretary, he had neglected to enter the order, the defendants were certainly at liberty to prove that fact in their defense. If they had so assented, but for any reason deemed sufficient by them had postponed its formal entry of record, the assent actually given, and the expenditure made by the defendants in pursuance thereof, would constitute a defense. The fact of the assent given upon their part and the expenditure made by the defendants pursuant thereto, would bar a recovery by the corporation plaintiff of the moneys so expended, and of which it had received the benefit. We cannot know what answer the defendant Williams would have made to the question objected to and excluded by the court, but the question certainly was both relevant and material.

Judgment and order reversed, and cause remanded for a new trial.

Mr. Justice RHODES delivered the following dissenting opinion, in which Mr. Justice McKINSTRY concurred:

I do not understand the facts of the case in all respects as they are recited in the opinion of the majority of the Court, nor do I concur in the conclusions therein announced. The money which was in the hands of Williams, as the treasurer of the plaintiff, although it had been raised for the purpose of complying with the agreement entered into between the plaintiff and the railroad company, had not been appropriated by the plaintiff to that purpose. It was known to the directors of the plaintiff that Williams was the equitable owner of the larger part of the stock of the railroad company, and that he had expended the sum of money which came to his hands as treasurer, in works on the railroad, but the railroad company had neither acknowledged the receipt of the money, nor had it executed the bond conditioned for the maintenance of the railroad, for the period of ten years, as contemplated by the parties. At the time when the first note was given, this was the condition in which the matters appeared: Williams was the equitable owner of nearly all the stock of the railroad company; he had expended the money which came to his hands, as the treasurer of the plaintiff, in improvements on the railroad. The plaintiff had not expressly authorized its expenditure; the railroad company had not in its corporate capacity either received or acknowledged the receipt of the money, or discharged the plaintiff from liability to pay the same. Nor had it executed the bond for the maintenance of the road as agreed upon. The plaintiff had demanded from Williams the payment of the money received by him as the treasurer of the plaintiffs, and he not being prepared to pay the same, gave the first note, in which it is recited that it was given for that amount of the funds of the plaintiff held by Williams as the treasurer of the plaintiff. Upon the maturity of that note, the note in suit was made. Nothing transpired between the giving of the first and second note, which, in any respect, altered the rights or liabilities of the parties; nor has anything having that effect

since occurred. The transfer of the stock to Stanford and others, with notice of the arrangement between the plaintiff and the railroad company, and of the transactions between the plaintiff and the defendants and their respective rights and liabilities, did not in any manner relieve the latter from such liabilities. Those who held the stock when the notes were given knew all the facts relating to the controversy, and since the transfer of the stock, the railroad company has taken no action in the premises. I see no ground upon which to question the liability of the defendants on the first note; and if they were liable on that, they are also liable on the second note, which was merely a renewal of the first note.

It is claimed that the first note was given in lieu of the bond which the plaintiff required from the railroad company; but I do not understand that to mean that the note was payable only upon the condition and in the event that the railroad company should fail to maintain the railroad for the period of ten years; but the defendants expected, before the maturity of the note, to become the legal owners of the stock in the railroad, when the bond could be given by the railroad company, which the then legal holder of the stock objected to giving, on the ground that the bond would impair his security for the payment of the money for which he held the stock.

It is stated in the prevailing opinion that Williams, when examined as a witness, was asked "if he knew of any reason why the assent of the corporation plaintiff to the expenditure of this money had not been formally entered upon its records." As I read the record that was not the question asked, but it was this: "State if you know any reason why it was not deemed advisable to publicly notice the order of payment." The question as stated in the opinion assumes that the corporation had given its assent to the expenditure, while the question, as I construe it, does not contain that implication. In my opinion, the exclusion of the question was not error, for two reasons: It is not shown that the corporation had in fact given such assent, which for any reason had not been entered of record—if that is the mean-

ing of the words "to publicly notice the order of payment."
It would be improper to ask why a corporation had not en-
tered an order which was not proven to have been made.
The second reason is that it was stated by the witness that
he had a conversation with Mr. Bryan and other directors
of the plaintiff, after the money had been expended on the
railroad, in which they concluded "that it was not neces-
sary to take final action in the matter because of difficulties
existing with the dock company" about the payment of
money by it to the railroad company.

I am of the opinion that the judgment and order should
be affirmed.